In THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-00378-ELG |
| | ) | |
| BROUGHTON CONSTRUCTION CO., LLC | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WENDELL WEBSTER, in his official capacity as chapter 7 trustee and as assignee of Industrial Bank and Nationwide Mutual Insurance Company | ) | Adv. Case No. 25-10054-ELG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SQUARE FUNDING LLC d/b/a SQUARE ADVANCE | ) | |
| | ) | |
| Defendant. | ) | |

# EXPERT REPORT OF
# LAUREN P. BERRET, JD, CPA
# MANAGING DIRECTOR – EISNER ADVISORY GROUP LLC

April 13, 2026

Lauren P. Berret, JD, CPA
Eisner Advisory Group LLC
One Logan Square
130 North 18th Street, Suite 3000
Philadelphia, PA 19103
M: 610.413.8792
E: lauren.berret@eisneramper.com

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

### TABLE OF CONTENTS

I.   Retention and Scope ……………………………………………………… 4
   A.  Retention ……………………………………………………………… 4
   B.  Scope ……………………………………………………………… 4
   C.  Qualifications ……………………………………………………… 4
   D.  Fees and Invoices ………………………………………………… 5
   E.  Documents Relied Upon …………………………………………… 5
   F.  Qualifying Language ……………………………………………… 5
II.  Background ……………………………………………………………… 6
   A.  Parties ……………………………………………………………… 6
      1.  Broughton Construction Co., LLC …………………………… 6
      2.  Square Funding LLC d/b/a Square Advance ………………… 6
   B.  Square Merchant Cash Advance Agreements ……………………… 7
      1.  June 2022 Agreement ………………………………………… 7
      2.  September 2022 Agreement …………………………………… 8
      3.  December 2022 Agreement …………………………………… 9
III. Methodology and Overview ……………………………………………… 10
IV.  Financial Condition ……………………………………………………… 10
   A.  Summary of Financing Agreements ……………………………… 10
      1.  Industrial Bank Loans………………………………………… 11
         a.  2017 Line of Credit ……………………………………… 11
         b.  2018 Term Loan …………………………………………… 12
         c.  2022 Line of Credit ……………………………………… 13
      2.  Merchant Cash Advances …………………………………… 13
         a.  CloudFund LLC / Delta Bridge Funding LLC …………… 14
         b.  CFG Merchant Solutions, LLC …………………………… 15
      3.  Automobile Loans …………………………………………… 15
      4.  Credit Card Obligations ……………………………………… 16
      5.  Other Financing Obligations ………………………………… 16
   B.  Financial Information ……………………………………………… 17
      1.  Analysis of Cash Receipts and Disbursements ……………… 17
      2.  Federal Income Tax Returns ………………………………… 18
      3.  Bankruptcy Schedules ………………………………………… 19
V.   Reasonably Equivalent Value…………………………………………… 19
   A.  June 2022 Agreement ……………………………………………… 20
      1.  Overview of the Transaction ………………………………… 20
      2.  Comparison of Value Exchanged …………………………… 20
      3.  Cost of Debt ………………………………………………… 20
      4.  Weekly Remittance Obligations ……………………………… 21
      5.  Actual Funding and Repayment Activity …………………… 22
      6.  Summary of Economic Impact and Reasonably Equivalent Value … 22
   B.  September 2022 Agreement ………………………………………… 23
      1.  Overview of the Transaction ………………………………… 23
      2.  Comparison of Value Exchanged …………………………… 24
      3.  Cost of Debt ………………………………………………… 24

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

|  | 4. | Weekly Remittance Obligations | ………………………………… | 25 |
|  | 5. | Actual Funding and Repayment Activity | …………………………… | 26 |
|  | 6. | Summary of Economic Impact and Reasonably Equivalent Value | …… | 26 |
| C. | December 2022 Agreement | | ………………………………………… | 27 |
|  | 1. | Overview of the Transaction | …………………………………… | 27 |
|  | 2. | Comparison of Value Exchanged | …………………………… | 28 |
|  | 3. | Cost of Debt | ………………………………………………… | 28 |
|  | 4. | Weekly Remittance Obligations | ………………………………… | 29 |
|  | 5. | Actual Funding and Repayment Activity | …………………………… | 29 |
|  | 6. | Summary of Economic Impact and Reasonably Equivalent Value | …… | 30 |
| VI. Conclusion | | | ……………………………………………………… | 31 |

**LIST OF TABLES**

Table 1.      Summary of Square Merchant Cash Advance Agreements  ……………  7

Table 2.      Summary of Monthly Deposits and Withdrawals for M&T Bank account ending in 4250 for the period of January 1, 2022, to August 15, 2023.      ……   17

**APPENDICES**

Appendix A.   Curriculum Vitae of Lauren P. Berret

Appendix B.   Documents Relied Upon

**EXHIBITS**

Exhibit 1.     Summary of Deposits and Withdrawals related to Square Funding LLC/Square Advance Transaction Summary for the period of June 14, 2022, to August 15, 2023

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

## I.   RETENTION AND SCOPE

### A.  Retention

I, Lauren P. Berret, am a Managing Director at Eisner Advisory Group LLC ("EA Group"), an international advisory firm.[1] I, along with EA Group, were retained by Maurice "Mac" VerStandig, Esq., and The VerStandig Law Firm, LLC, Special Counsel ("Special Counsel") for Wendell W. Webster, Chapter 7 Trustee ("Chapter 7 Trustee") of the Bankruptcy Estate of Broughton Construction Co., LLC ("Broughton" or the "Debtor"), by an engagement letter dated March 19, 2026, to provide financial advisory and expert services in connection with this matter.

### B.  Scope

In that capacity, I was asked to (i) analyze the Debtor's financial condition during the relevant period, and (ii) evaluate whether reasonably equivalent value was received by the Debtor in connection with the transactions at issue herein.

### C.  Qualifications

I am a Managing Director at EA Group, specializing in restructuring, turnaround, and financial advisory services.  I have extensive experience advising distressed companies, fiduciaries, and other stakeholders in connection with bankruptcy proceedings, receiverships, and related matters.  My work frequently involves analyzing financial condition, liquidity, solvency, and value in connection with complex transactions. A copy of my curriculum vitae, which

---

[1] "EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC provide professional services. EisnerAmper LLP and Eisner Advisory Group LLC are independently owned firms that practice in an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed CPA firm that provides attest services, and Eisner Advisory Group LLC and its subsidiary entities provide tax and business consulting services. Eisner Advisory Group LLC and its subsidiary entities are not licensed CPA firms.

includes a more detailed description of my experience and prior engagements, is attached as

**Appendix A**.

### D. Fees and Invoices

EA Group is compensated for my time at $750.00 per hour.  EA Group professionals

utilized on this matter under my direction and supervision are compensated at hourly rates

ranging from $245.00 to $995.00.  Compensation to EA Group or me is not contingent in any

way upon the outcome of this matter.

### E. Documents Relied Upon

In the course of my analysis, I conducted a detailed review of documents from a variety

of sources related to the matters considered in this report, including the pleadings and other

papers filed with the Court, transaction documents, financial information, publicly available

information, and other documents made available to me.  A listing of documents relied upon is

presented in **Appendix B**.

### F. Qualifying Language

This report and the accompanying exhibits ("Report") are intended solely for use in

connection with this matter and may contain confidential information.  Any unauthorized use or

distribution of this Report or its attachments is strictly prohibited.  I reserve the right to

supplement or amend this Report upon learning of additional information that may impact the

findings or opinions stated herein.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

## II.    BACKGROUND

### A. Parties

#### 1.   Broughton Construction Co., LLC

Broughton Construction Co., LLC ("Broughton" or the "Debtor") was a General Construction and Construction Management firm that specialized in site work, educational, commercial, institutional, and tenant fit-out construction.[2]  Broughton is a limited liability company, formed pursuant to the laws of the District of Columbia on or about September 11, 2006, by Casey Broughton Stringer ("Mr. Stringer").[3]  On December 15, 2023 ("Petition Date"), Broughton filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Columbia ("Bankruptcy Court").[4]

#### 2.   Square Funding LLC d/b/a Square Advance

Square Funding, LLC d/b/a Square Advance ("Square" or the "Defendant") is a limited liability company, formed pursuant to the laws of the State of New Jersey on or about January 13, 2022.[5]  Based on information and belief, Square is in the business of providing upfront funding to small businesses in exchange for a portion of their business revenue.[6]

---

[2] BROUGHTON CONSTRUCTION COMPANY, INC. (March 24, 2026). *LinkedIn page*. LinkedIn. https://www.linkedin.com/company/broughton-construction-llc/about/.

[3] *Id*. *See also* Government of the District of Columbia, Department of Licensing and Consumer Protection, Business Entity Search, Broughton Construction Company, LLC, https://corponline.dlcp.dc.gov/homepage/business-search (last accessed March 24, 2026).  On August 28, 2023, Mr. Stringer filed a voluntary petition for relief under chapter 7 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia.  *In re Casey Broughton Stringer*, Case No. 23-00239 (Bankr. D.D.C.), Chapter 7 Voluntary Petition filed August 28, 2023.

[4] *In re Broughton Construction Co., LLC*, Case No. 23-00378 (Bankr. D.D.C.), Chapter 7 Voluntary Petition filed December 15, 2023.

[5] NJ Department of the Treasury, Division of Revenue & Enterprise Service, Business Entity Search, Square Funding LLC, https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName. (last accessed March 24, 2026).

[6] Square Advance, https://squareadvance.com/ (last accessed March 24, 2026).

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

### B. Square Merchant Cash Advance Agreements

In the two-year period prior to the Debtor's filing of a petition for bankruptcy relief,

Square and the Debtor entered into a series of three Standard Merchant Cash Advance

Agreements, as summarized in the table below and described in more detail thereafter.[7]

**Table 1. Summary of Square Merchant Cash Advance Agreements**[8]

| Agreement | Date of Agreement | Receivables Purchased Amt. | Spec. % | Purchase Price | Net Funds Provided | Net Amt. to Be Rec'd by Merchant | Weekly Payment |
|---|---|---|---|---|---|---|---|
| June 2022 | 06/14/2022 | $699,500 | 25% | $500,000 | $487,500 | $487,500 | $29,146 |
| Sept. 2022 | 09/08/2022 | $775,500 | 25% | $550,000 | $537,500 | $187,750 | $32,313 |
| Dec. 2022 | 12/09/2022 | $846,000 | 14% | $600,000 | $587,500 | $232,063 | $38,455 |
| **Total** | | **$2,321,000** | | **$1,650,000** | **$1,612,500** | **$907,313** | |

### 1. June 2022 Agreement

On June 14, 2022, Square and Broughton entered into a Standard Merchant Cash

Advance Agreement ("June 2022 Agreement").[9]  The June 2022 Agreement contemplated that

Square would provide Broughton with a purchase price of $500,000.00 less additional fees and

expenses of $12,500.00, or $487,500.00 (the "Net Funds Provided").[10]  In exchange, Broughton

agreed to remit a total of $699,500.00, representing the total amount of future receivables to be

delivered (the "Receivables Purchased Amount").[11]

The June 2022 Agreement specified that Broughton would remit 25.0% of its receivables

(the "Specified Percentage") to Square.[12]  The June 2022 Agreement further provided for weekly

---

[7] *See* Standard Merchant Cash Advance Agreement between Square Advance LLC and Broughton Construction Company LLC, dated June 14, 2022; Standard Merchant Cash Advance Agreement between Square Advance LLC and Broughton Construction Company LLC, dated September 8, 2022; and Standard Merchant Cash Advance Agreement between Square Advance LLC and Broughton Construction Company LLC, dated December 9, 2022.
[8] *Id.*
[9] June 2022 Agreement.
[10] *Id.*
[11] *Id.*
[12] *Id.*

payments in the amount of approximately $29,145.83, which represented an approximation based on the Specified Percentage and Broughton's anticipated receivables.[13]  Payments pursuant to the June 2022 Agreement were to continue until the Receivables Purchased Amount was paid in full, subject to the terms and conditions set forth therein.[14]

### 2. September 2022 Agreement

On September 8, 2022, Square and Broughton entered into a second Standard Merchant Cash Advance Agreement ("September 2022 Agreement").[15]  The September 2022 Agreement contemplated that Square would provide Broughton with purchase price of $550,000.00 (the "Purchase Price") less additional fees and expenses of $12,500.00, or $537,500.00 (the "Net Funds Provided").[16]  An addendum to the September 2022 Agreement instructed that $349,750.04 of the Purchase Price be paid to Square, with the balance of $187,749.96 (the "Net Amount to Be Received Directly by Merchant(s)") paid to Broughton.[17]

In exchange, Broughton agreed to remit a total of $775,500.00, representing the total amount of future receivables to be delivered (the "Receivables Purchased Amount").[18]

The September 2022 Agreement specified that Broughton would remit 25.0% of its receivables (the "Specified Percentage") to Square.[19]  The September 2022 Agreement further provided for weekly payments in the amount of approximately $32,312.50, which represented an approximation based on the Specified Percentage and Broughton's anticipated receivables.[20]

---

[13] *Id.*
[14] *Id.*
[15] September 2022 Agreement.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

Payments pursuant to the September 2022 Agreement were to continue until the Receivables

Purchased Amount was paid in full, subject to the terms and conditions set forth therein.[21]

###    3.   **December 2022 Agreement**

On December 9, 2022, Square and Broughton entered into a third Standard Merchant

Cash Advance Agreement ("December 2022 Agreement").[22]  The December 2022 Agreement

contemplated Square would provide Broughton with a purchase price of $600,000.00 (the

"Purchase Price") less additional fees and expenses of $12,500.00, or $587,500.00 (the "Net

Funds Provided").[23]  An addendum to the December 2022 Agreement instructed that

$355,437.50 of the Purchase Price be paid to Square, with the balance of $232,062.50 (the "Net

Amount to Be Received Directly by Merchant(s)") paid to Broughton.[24]

In exchange, Broughton agreed to remit a total of $846,000.00, representing the total

amount of future receivables to be delivered (the "Receivables Purchased Amount").

The December 2022 Agreement specified that Broughton would remit 14.0% of its

receivables (the "Specified Percentage") to Square.[25]  The December 2022 Agreement further

provided for weekly payments in the amount of approximately $38,454.54, which represented an

approximation based on the Specified Percentage and Broughton's anticipated receivables.[26]

Payments pursuant to the December 2022 Agreement were to continue until the Receivables

Purchased Amount was paid in full, subject to the terms and conditions set forth therein.[27]

---

[21] *Id*.
[22] December 2022 Agreement.
[23] *Id*.
[24] *Id*.
[25] *Id*.
[26] *Id*.
[27] *Id*.

## III.   METHODOLOGY AND OVERVIEW

The purpose of my analysis was to evaluate (i) the financial condition of Broughton during the relevant period[28] and (ii) whether Broughton received reasonably equivalent value in connection with the agreements with Square described above.

In performing my analysis, I considered the structure and terms of the agreements, Broughton's financial records, and other information made available to me as of the date of this Report.

## IV.   FINANCIAL CONDITION

Based on the information available as of the date of this Report, I evaluated Broughton's financial condition through a review of its pre-petition capital structure, financing activity, and other indicia of liquidity constraints.  The available records, including bankruptcy court filings, merchant cash advance agreements, and bank statements, provide insight into Broughton's access to liquidity and overall financial condition during the relevant period.  I reserve the right to supplement or amend this Report upon learning of additional information that may impact the findings or opinions stated herein.

### A.  Summary of Financing Arrangements

This section summarizes the Debtor's disclosed financing arrangements based on information available from the bankruptcy filings, including proofs of claim and the Debtor's schedules, as well as the Debtor's M&T Bank account statements for the relevant period.

---

[28] For purposes of my analysis, the "relevant period" refers generally to the period preceding the Petition Date during which the Debtor incurred and serviced various obligations, including the transactions at issue herein.  My analysis also considers information outside this period where relevant to assessing the Debtor's financial condition and ability to meet its obligations.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

Descriptions of the financing arrangements herein are based on available records as of the date of this Report.

## 1. Industrial Bank Loans

Based on the Debtor's Schedules of Assets and Liabilities and the Proofs of Claim filed in this matter, the Debtor maintained at least three commercial credit facilities with Industrial Bank, N.A. ("Industrial Bank").[29] As of the Petition Date, the aggregate amount of indebtedness under these facilities totaled approximately $6.59 million to $6.81 million.[30] As reflected in the available filings, these facilities were secured, at least in part, by the Debtor's accounts receivable.[31]

### a. 2017 Line of Credit

The Debtor maintained a commercial revolving line of credit with Industrial Bank, as reflected in Schedule D and Proof of Claim No. 17, filed by Industrial Bank.[32] The line of credit was originally entered into on or about May 19, 2017, and was subsequently amended from time to time ("2017 Line of Credit").[33]

According to the proof of claim filed by Industrial Bank, as of the Petition Date, the outstanding balance under this facility was $2,008,269.45, consisting of a principal judgment balance of $1,910,696.61, accrued and unpaid interest in the amount of $97,397.84, and costs in

---

[29] *See* Voluntary Petition [Docket No. 1], *In re Broughton Construction Co., LLC*, Case No. 23-00378 (Bankr. D.D.C.); Proof of Claim No. 17, filed by Industrial Bank, *In re Broughton Construction Co., LLC*, Case No. 23-00378 (Bankr. D.D.C.).

[30] According to the Debtor's schedules, the claim amount is $6,588,349.00. According to the proof of claim filed by Industrial Bank, the claim amount is $6,814,436.71. *See* Voluntary Petition, *In re Broughton Construction Co., LLC*, Case No. 23-00378; Proof of Claim No. 17 filed by Industrial Bank.

[31] Voluntary Petition, *In re Broughton Construction Co., LLC*, Case No. 23-00378.

[32] *See* Voluntary Petition, *In re Broughton Construction Co., LLC*, Case No. 23-00378; Proof of Claim No. 17 filed by Industrial Bank.

[33] Proof of Claim No. 17 filed by Industrial Bank.

the amount of $175.00.[34]  The facility was secured, at least in part, by the Debtor's accounts receivable and other assets,[35] and public UCC filings reflect Industrial Bank's asserted security interest in such assets.[36]  Public records further indicate that a judgment was entered in favor of Industrial Bank in connection with this facility in July 2023.[37]

### b.  2018 Term Loan

The Debtor also maintained a commercial term loan with Industrial Bank, as reflected in Schedule D and Proof of Claim No. 17, filed by Industrial Bank.[38]  The term loan was originally entered into on or about June 15, 2018, and was subsequently amended from time to time ("2018 Term Loan").[39]

According to the proof of claim filed by Industrial Bank, as of the Petition Date, the outstanding balance under this facility was $1,493,673.55, consisting of a principal judgment balance of $1,426,154.23, accrued and unpaid interest in the amount of $67,344.32, and costs in the amount of $175.00.[40]  The facility was secured, at least in part, by the Debtor's accounts receivable and other assets, and public UCC filings reflect Industrial Bank's asserted security interest in such assets.[41]  Public records further indicate that in August 2023, a judgment was entered in favor of Industrial Bank in connection with this facility.[42]

---

[34] *Id.*
[35] Proof of Claim No. 17 filed by Industrial Bank.
[36] A Uniform Commercial Code ("UCC") Financing Statement (Form UCC-1) is a legal form filed by a secured creditor to give public notice of the secured creditor's asserted security interest in the personal property of a debtor. *See* Proof of Claim No. 17 filed by Industrial Bank at Ex. C.
[37] Proof of Claim No. 17 filed by Industrial Bank at Ex. D.
[38] Proof of Claim No. 17 filed by Industrial Bank.
[39] *Id.*
[40] *Id.*
[41] Proof of Claim No. 17 filed by Industrial Bank at Ex. G.
[42] Proof of Claim No. 17 filed by Industrial Bank at Ex. H.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

### c. 2022 Line of Credit

The Debtor maintained a second commercial revolving line of credit with Industrial Bank, as reflected in Schedule D and Proof of Claim No. 17, filed by Industrial Bank.[43] The second line of credit was originally entered into on or about April 5, 2022 ("2022 Line of Credit").[44]

According to the proof of claim filed by Industrial Bank, as of the Petition Date, the outstanding balance under this facility was $3,312,493.71, consisting of an unpaid principal balance of $2,982,829.00 million, accrued and unpaid interest in the amount of $329,664.71, and late charges, fees, legal expenses, and costs.[45] The facility was secured, at least in part, by the Debtor's accounts receivable and other assets, and public UCC filings reflect Industrial Bank's asserted security interest in such assets.[46]

The Debtor's commercial credit facilities with Industrial Bank, including the 2022 Line of Credit, were in place prior to the transactions with Square being evaluated herein. The transactions with Square were subsequently entered into in June, September, and December 2022. Accordingly, the Debtor's receivables were subject to existing secured obligations at the time of the transactions with Square. These facts suggest that the pool of receivables available to support additional financing arrangements may have been limited.

### 2. Merchant Cash Advances

In addition to the term loans, lines of credit, small business loans, and the merchant cash advance agreements that are the subject of this adversary proceeding, the Debtor also entered

---

[43] Voluntary Petition, *In re Broughton Construction Co., LLC*, Case No. 23-00378; Proof of Claim No. 17 filed by Industrial Bank.
[44] Proof of Claim No. 17 filed by Industrial Bank.
[45] *Id.*
[46] Proof of Claim No. 17 filed by Industrial Bank at Ex. K.

into a series of additional merchant cash advance agreements with at least two other financing providers during the relevant period.[47]  As discussed in more detail below, although the specific terms vary, these arrangements generally required frequent remittances in fixed or formula-based amounts, irrespective of the Debtor's actual cash flow in a given period.

### a.   *CloudFund LLC / Delta Bridge Funding LLC*

During the period of November 2021 through December 2022, the Debtor entered into a series of future receivables purchase and sale agreements with CloudFund LLC ("CloudFund") and/or its servicing agent, Delta Bridge Funding LLC ("Delta").[48]  As identified in the relevant pleadings, three merchant cash advance agreements were entered into on or about February 2022, August 2022, and October 2022.[49]

In the aggregate, CloudFund and/or Delta was/were to provide Broughton with proceeds of $2,000,000.00 less due diligence fees and holdbacks applied to retirements of the Debtor's remaining obligations under existing agreements.[50]  As a result, the Debtor only received disbursements in the aggregate of $1,103,887.00.[51]  In exchange, the Debtor purportedly agreed to remit future receivables in the total amount of $2,802,900.00.[52]  Pursuant to the three agreements, the Debtor remitted a total of $1,039,762.00 to CloudFund and/or Delta.[53]

---

[47] Among the documents reviewed was a "Factor Agreement Chart" for fiscal year 2022 prepared by Mr. Stringer on behalf of the Debtor and provided to Industrial Bank that identifies numerous short-term merchant cash advance arrangements including initial borrowings and refinancings during the period of July 2021 through December 2022. *See* Complaint to Determine Dischargeability of Debt [Docket No. 1], *Industrial Bank v. Casey Broughton Stringer*, Adv. No. 25-10034-ELG, (Bankr. D.D.C.), Ex. A, Ex. B, and Ex. C.

[48] *See* Complaint [Docket No. 1], *Wendell Webster v. Cloudfund LLC*, Adv. No. 25-10049-ELG, (Bankr. D.D.C.); Answer to Complaint [Docket No. 17], *Wendell Webster v. Cloudfund LLC*, Adv. No. 25-10049-ELG, (Bankr. D.D.C.).

[49] Answer to Complaint, *Wendell Webster v. Cloudfund LLC*, Adv. No. 25-10049-ELG.

[50] *Id*.

[51] *Id*. *See also* M&T Bank Account Statements, January 1, 2019, through August 31, 2023.

[52] Answer to Complaint, *Wendell Webster v. Cloudfund LLC*, Adv. No. 25-10049-ELG.

[53] *Id*.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

### b. CFG Merchant Solutions, LLC

During the period of May 2019 through October 2022, the Debtor entered into a series of future receivables purchase and sale agreements with CFG Merchant Solutions, LLC ("CFG").[54] As identified in the relevant pleadings, at least five, and upon information and belief, a total of six merchant cash advance agreements were entered into during the period of May 2019 through October 2022.[55]

Based on the available bank account records, during the period of August 30, 2019, to January 19, 2023, Broughton received deposits from CFG of approximately $3,298,389.00.[56] During the period of July 31, 2019, to April 27, 2023, the Debtor remitted approximately $4,744.414.00 to CFG.[57]

### 3. Automobile Loans

A review of the Debtor's M&T Bank Account Statements indicates that multiple automobile loan obligations were outstanding and being serviced during the relevant period. During the two-year period preceding the Petition Date, the Debtor made approximately 36 payments to Toyota Financial Retail totaling $29,748.61 and 21 payments to Ford Motor Credit totaling $13,109.18.[58] While these payments may not necessarily represent all automobile-

---

[54] *See* Complaint [Docket No. 1], *Wendell Webster v. CFG Merchant Solutions, LLC*, Adv. No. 25-10055-ELG, (Bankr. D.D.C.); Answer to Complaint [Docket No. 9], *Wendell Webster v. CFG Merchant Solutions, LLC*, Adv. No. 25-10055-ELG, (Bankr. D.D.C.).

[55] A review of the available records suggests a number of additional agreements were entered into and/or the Debtor received additional funds from CFG during the relevant period. Complaint, *Wendell Webster v. CFG Merchant Solutions, LLC*, Adv. No. 25-10055-ELG; Answer to Complaint, *Wendell Webster v. CFG Merchant Solutions, LLC*, Adv. No. 25-10055-ELG; Complaint to Determine Dischargeability of Debt, *Industrial Bank v. Casey Broughton Stringer*, Adv. No. 25-10034-ELG, Ex. A, Ex. B, and Ex. C; Bank account statements for Broughton Construction Co., LLC, account ending in 4250, M&T Bank, for the period January 1, 2019, through August 31, 2023 (the "M&T Bank Account Statements").

[56] *Id.*

[57] *Id.*

[58] M&T Bank Account Statements, January 1, 2019, through August 31, 2023.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

related obligations of the Debtor, they do reflect additional reoccurring liabilities being serviced during periods of constrained cash flow.

### 4. Credit Card Obligations

The Debtor's Schedules of Assets and Liabilities also reflect multiple credit card obligations outstanding as of the Petition Date.[59]  Additionally, a review of the Debtor's M&T Bank Account Statements during the two-year period preceding the Petition Date indicates the Debtor made approximately 19 payments to American Express totaling $401,677.79,[60] two payments to Capital One totaling $12,900.24, and eight payments to First Citizens Bank totaling $24,394.00.[61]  While these payments may not necessarily represent all credit card-related obligations of the Debtor, they do reflect additional reoccurring liabilities being serviced during periods of constrained cash flow.

### 5. Other Financing Obligations

In addition to the financing arrangements specifically identified herein, a review of the Debtor's M&T Bank Account Statements suggests that the Debtor may have engaged in other short-term or alternative financing transactions during the relevant period.  Such obligations or transactions may include, among others, amounts associated with the following vendors or creditors: Expansion Capital, The Business Backer, Advance Smart, Thryve Capital, Kabbage, and American Microloan.[62]  When considered with the Debtor's other obligations, these arrangements would have required additional ongoing debt service during periods of constrained

---

[59] Voluntary Petition, *In re Broughton Construction Co., LLC*, Case No. 23-00378.
[60] Note two payments in May 2023 were made to "American Express Loan Pmt."
[61] M&T Bank Account Statements, January 1, 2019, through August 31, 2023.
[62] *Id.*

cash flow, further increasing cash flow constraints and contributing to the Debtor's overall

indebtedness.

## B. Financial Information

The following observations are based on my review of the Debtor's schedules and the

bank account statements produced to date.  I reserve the right to supplement or amend this

Report upon learning of additional information that may impact the findings or opinions stated

herein.

### 1. Analysis of Cash Receipts and Disbursements

I analyzed the Debtor's cash receipts and disbursements for the M&T Bank account

ending in 4250 for the period of January 1, 2019, through August 15, 2023, to assess general

cash flow trends.[63]  The account reflects regular inflows (deposits and other credits) and outflows

(disbursements and other debits) throughout the period, with variability in both the timing and

amounts of such activity.  The net difference between inflows and outflows is referred to herein

as net cash flow.  A summary of the Debtor's monthly cash inflows and outflows, based on the

activity reflected in the Debtor's M&T Bank account during the two-year period preceding the

Petition Date,[64] is presented in the table below.

**Table 2. Summary of Monthly Deposits and Withdrawals for M&T Bank account ending in 4250**
*For the period of January 1, 2022, to August 15, 2023*

| Month | Deposits and Other Credits | Withdrawals and Other Debits | Net Cash Flow |
|---|---|---|---|
| Jan-2022 | $1,497,265.71 | $1,186,511.14 | $310,754.57 |
| Feb-2022 | 819,265.84 | 965,635.59 | (146,369.75) |
| Mar-2022 | 1,325,441.22 | 1,448,139.95 | (122,698.73) |
| Apr-2022 | 1,748,459.05 | 1,581,358.68 | 167,100.37 |

---

[63] *Id.*

[64] A "Collection Account – Charge Off Credit" to the Debtor's M&T Bank account ending in 4250 occurred on August 15, 2023, and the account was presumably closed thereafter. *See* M&T Bank Account Statements, August 1, 2023, through August 31, 2023.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

| Month | Deposits and Other Credits | Withdrawals and Other Debits | Net Cash Flow |
|---|---|---|---|
| May-2022 | 1,488,317.52 | 1,602,482.39 | (114,164.87) |
| Jun-2022 | 2,411,109.61 | 1,784,590.21 | 626,519.40 |
| Jul-2022 | 1,528,348.84 | 2,031,396.40 | (503,047.56) |
| Aug-2022 | 1,471,934.78 | 1,684,133.20 | (212,198.42) |
| Sep-2022 | 2,825,485.08 | 2,735,817.54 | 89,667.54 |
| Oct-2022 | 1,683,371.04 | 1,534,632.46 | 148,738.58 |
| Nov-2022 | 1,306,707.47 | 1,247,068.99 | 59,638.48 |
| Dec-2022 | 2,400,873.17 | 2,061,035.74 | 339,837.43 |
| Jan-2023 | 1,492,745.62 | 1,843,213.66 | (350,468.04) |
| Feb-2023 | 617,828.85 | 602,894.44 | 14,934.41 |
| Mar-2023 | 356,408.63 | 738,902.42 | (382,493.79) |
| Apr-2023 | 735,714.19 | 730,770.93 | 4,943.26 |
| May-2023 | 100,380.90 | 126,137.41 | (25,756.51) |
| Jun-2023 | - | 373.34 | (373.34) |
| Jul-2023 | 6,000.00 | 232.47 | 5,767.53 |
| Aug-2023 | 10,092.26 | 214.61 | 9,877.65 |
| **Total** | **$23,825,749.78** | **$23,905,541.57** | **$(79,791.79)** |

As reflected in Table 2, in multiple months, cash outflows exceeded cash inflows, resulting in negative net cash flows for those months and for the overall 20-month period.

## 2. Federal Income Tax Returns

I analyzed the Debtor's Federal tax returns for the years ending December 31, 2019, through December 31, 2021, to better assess its financial condition and operating performance during the relevant period.[65]  Financial information for the period of 2022 through the Petition Date in December 2023 was not available as of the date of this Report.  In addition, certain inconsistencies and/or limitations were noted in the available records, which may affect the completeness of the information.

---

[65] Broughton Construction, LLC, 2019 Federal Income Tax Return, Form 1120-S; Broughton Construction, LLC, 2020 Federal Income Tax Return, Form 1120-S; Broughton Construction, LLC, 2021 Federal Income Tax Return, Form 1120-S.

A comparison to the Debtor's bankruptcy schedules, as discussed in the next section, reflects significant changes in reported assets and liabilities over a relatively short period of time.

### 3.  **Bankruptcy Schedules**

As reflected in the Debtor's bankruptcy schedules, as of the Petition Date, the Debtor reported total assets of $2.24 million, and total liabilities of $14.41 million.[66]  According to the Debtor's 2021 Federal Income Tax Return, at December 31, 2021, the Debtor reported total assets of $7.07 million and total liabilities of $6.89 million.[67]  These changes in reported assets and liabilities over a relatively short period of time are not readily explained by the available information.

## V.    REASONABLY EQUIVALENT VALUE

Section 548(a)(1)(B) of the Bankruptcy Code permits the avoidance of certain transfers or obligations where the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation."[68]  While the Bankruptcy Code defines "value" for purposes of section 548,[69] it does not define what constitutes "reasonably equivalent value."  Accordingly, the analysis focuses on the economic substance of a transaction rather than its form, evaluating whether the value received by the debtor was commensurate with the value transferred or liabilities incurred.[70]  The analysis of reasonably equivalent value is fact-specific and requires consideration of the totality of the circumstances, including the practical economic effect of the transaction on the debtor's financial condition.[71]

---

[66] Voluntary Petition, *In re Broughton Construction Co., LLC*, Case No. 23-00378.
[67] Broughton Construction, LLC, 2021 Federal Income Tax Return, Form 1120-S.
[68] 11 U.S.C. § 548(a)(1)(B).
[69] For purposes of section 548, "value" means "property, or satisfaction or securing of a present or antecedent debt of the debtor but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).
[70] *See e.g.* Edward S. Weisfelner, *Advanced Fraudulent Transfers*, American Bankruptcy Institute (2014).
[71] *Id.*

Based on the information available as of the date of this Report, I evaluated whether the Debtor received reasonably equivalent value in connection with each of the transactions at issue.

## A. June 2022 Agreement

### 1. Overview of the Transaction

As summarized previously, on or about June 14, 2022, the Debtor entered into an agreement with Square pursuant to which the Debtor purportedly sold future receivables with a face amount of $699,500.00 in exchange for the purchase price of $500,000.00, less additional fees and expenses of $12,500.00, for net funds to be received of $487,500.00.[72] The agreement provided for remittances based on a specified percentage of receivables, identified as approximately 25.0%, and contemplated regular weekly payments until the full remittance amount was satisfied.[73]

### 2. Comparison of Value Exchanged

Pursuant to the agreement, the Debtor was to receive net cash proceeds of approximately $487,500.00 in exchange for an obligation to remit approximately $699,500.00.[74] This reflects a difference between the value to be received by the Debtor and the obligations incurred under the June 2022 Agreement of approximately $212,000.00 exclusive of the timing and structure of the required payments.[75]

### 3. Cost of Debt

Based on the difference between the net cash proceeds to be received and the total amount required to be remitted, the transaction reflects an inherent cost to the Debtor. The

---

[72] June 2022 Agreement.
[73] *Id.*
[74] *Id.*
[75] $699,500.00 - $487,500.00 = $212,000.00.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

Debtor was to receive a fixed amount of cash in exchange for an obligation to remit a greater amount over time, and the difference between those amounts represents the economic cost of the transaction. While the cost of debt may be higher in circumstances where a company is experiencing financial distress, it remains a relevant factor in evaluating the economic impact of the transaction.

Put simply, based on the net cash proceeds to be received and the total amount required to be remitted, the transaction reflects an implied cost of approximately 43.5%. This represents the difference between the total obligation to the Debtor and the amount to be advanced by Square, expressed as a percentage of the net proceeds received.[76]

### 4. Weekly Remittance Obligations

The June 2022 Agreement required the Debtor to remit approximately $29,145.83 on a weekly basis, reportedly reflective of a specified percentage (25.0%) of receivables for that week.[77] Based on the required remittance amounts, the total obligation would be satisfied over approximately 24 weeks (approximately six months), assuming consistent payments.[78]

The June 2022 Agreement does not specify an interest rate. However, based on the total amount required to be remitted, the net cash proceeds to be received, and the expected duration of repayment, it is possible to estimate the implied cost of debt which can be expressed on an annualized basis in a manner comparable to that of an effective interest rate.[79]

---

[76] ($699,500.00 - $487,500.00) / $487,500.00 = 43.5% (cost percentage).
[77] June 2022 Agreement.
[78] $699,500.00 / $29,145.83 = 24.0 (repayment period in weeks); 24.0 / 52.0 = 0.46 years (repayment term in years).
[79] *See generally* Bruce, Kara J., *Desperation Finance: Merchant Cash Advances in Bankruptcy and Beyond*, Emory Bankruptcy Developments Journal (posted February 26, 2026), available at http://dx.doi.org/10.2139/ssrn.6192358; John F. Hilson & Stephen L. Sepinuck, *A "Sale" of Future Receivables: Disguising A Secured Loan as a Purchase of Hope*, 9 Transactional Law 14 (2019).

When this cost is considered over the estimated repayment period, the implied annualized cost of debt is approximately 94.2%.[80]  To the extent any fees or amounts withheld at funding are assumed to have provided a benefit to the Debtor, the implied cost of debt would be slightly reduced when measured against the stated advance amount.  However, even under this assumption, the resulting implied cost remains significant.[81]

### 5.  Actual Funding and Repayment Activity

The Debtor's bank records reflect the timing and flow of funds associated with the June 2022 Agreement.  On June 14, 2022, Square wired $485,000.00 to Broughton.[82]  On June 15, 2022, Square wired $2,500.00 to Broughton.[83]  In total, Square wired $487,500.00 to Broughton, which equaled the net funds to be received by Broughton contemplated by the June 2022 Agreement.

Following receipt of these funds, regular withdrawals from the Debtor's M&T Bank account began on June 21, 2022.  According to the Debtor's bank account statements, 12 weekly payments of $29,145.83 were made beginning June 21, 2022, and ending September 6, 2022, totaling $349,749.96.[84]  *See* **Exhibit 1**.

### 6.  Summary of Economic Impact and Reasonably Equivalent Value

The effective cost of the funds received, as described above, exceeded the amount of net cash proceeds made available to the Debtor.  Moreover, the June 2022 Agreement was premised on the availability of future receivables to support the weekly remittances.  However, based on the records available as of the date of this Report, those receivables were limited or otherwise

---

[80] 43.5% / 0.46 = 94.5% (annualized cost of debt as a percentage).

[81] ($699,500.00 - $500,000.00) / $500,000.00 = 39.9% (alternative cost percentage); 39.9% / 0.46 = 86.7% (alternative annualized cost of debt as a percentage).

[82] M&T Bank Account Statements, June 1, 2022, to June 30, 2022.

[83] *Id.*

[84] M&T Bank Account Statements, June 1, 2022, to September 30, 2022.

insufficient to sustain the required payments under the obligation without reliance on additional financing.

In this broader context of layered indebtedness, the transaction entered into pursuant to the June 2022 Agreement did not provide a commensurate economic benefit to the Debtor. Accordingly, it is my opinion that the Debtor did not receive reasonably equivalent value in exchange for this transaction.

## B. September 2022 Agreement

### 1. Overview of the Transaction

As summarized previously, on or about September 8, 2022, the Debtor entered into an agreement with Square pursuant to which the Debtor purportedly sold future receivables with a face amount of $775,500.00 in exchange for the purchase price of $550,000.00, less additional fees and expenses of $12,500.00, for net funds to be received of $537,500.00.[85]  The September 2022 Agreement also provided for remittances based on a specified percentage of receivables, identified as approximately 25.0%, and contemplated regular weekly payments until the full remittance amount was satisfied.[86]

However, an addendum to the September 2022 Agreement instructed that $349,750.04 of the purchase price be paid to Square, with the balance of $187,749.96 to be paid to the Debtor.[87] While the September 2022 Agreement does not explicitly state that any portion of the proceeds was applied to satisfy the remaining obligations under the June 2022 Agreement, based on the timing and flow of funds, it appears that amounts received in connection with the September 2022 Agreement were in fact used to satisfy such obligations.

---

[85] September 2022 Agreement.
[86] *Id.*
[87] *Id.*

As reflected in the Debtor's M&T Bank Account Statements, and as detailed in **Exhibit 1**, the Debtor received $487,500.00 in funds from Square in June 2022.[88]  The Debtor thereafter made 12 weekly payments to Square totaling $349,749.96.[89]  Pursuant to the June 2022 Agreement, the Debtor's obligation was $699,500.00.  Thus, at the time the September 2022 Agreement was entered into, the Debtor owed to Square a balance of $349,750.04, which is the same amount withheld by Square under the September 2022 Agreement.[90]

### 2.  Comparison of Value Exchanged

When considering the net cash proceeds actually received by the Debtor, together with amounts that appear to have been used to satisfy outstanding obligations under the June 2022 Agreement, the total obligation associated with this transaction exceeded the net new liquidity by approximately $587,750.04.[91]

### 3.  Cost of Debt

Based on the difference between the net cash proceeds received and the total amount required to be remitted, the transaction reflects an inherent cost to the Debtor.  The Debtor received a fixed amount of cash in exchange for an obligation to remit a greater amount over time, and the difference between those amounts represents the economic cost of the transaction. While the cost of debt may be higher in circumstances where a company is experiencing financial distress, it remains a relevant factor in evaluating the economic impact of the transaction.

---

[88] M&T Bank Account Statements, June 1, 2022, to September 30, 2022.
[89] M&T Bank Account Statements, June 1, 2022, to September 30, 2022.
[90] $699,500.00 - $349,749.96 = $349,750.04.
[91] $775,500.00 - $187,749.96 = $587,750.04.

Put simply, based on the net cash proceeds received and the total amount required to be remitted, the transaction reflects an implied cost of approximately 313.0%. This represents the difference between the total obligation to the Debtor and the amount advanced by Square, expressed as a percentage of the net cash proceeds received.[92]

### 4. Weekly Remittance Obligations

The September 2022 Agreement required the Debtor to remit approximately $32,312.50 on a weekly basis, reportedly reflective of a specified percentage (25.0%) of receivables for that week.[93]   Based on the required remittance amounts, the total obligation would be satisfied over approximately 24 weeks (approximately six months), assuming consistent payments.[94]

The September 2022 Agreement does not specify an interest rate. However, based on the total amount required to be remitted, the net cash proceeds to be received, and the expected duration of repayment, it is possible to estimate the implied cost of debt which can be expressed on an annualized basis in a manner comparable to that of an effective interest rate.[95]

When this cost is considered over the estimated repayment period, the implied annualized cost of debt is approximately 680.4%.[96]  This level of costs reflects a financing structure that is significantly more expensive than what would be expected in conventional financing arrangements.

---

[92] ($775,500.00 - $187,749.96) / $187,749.96 = 313.0% (cost percentage).  Assuming, for illustrative purposes, that the full stated purchase price is considered without adjustments for fees and expenses and for amounts applied to prior obligations, the implied cost would approximate 41.0%. ($775,500.00 - $550,000.00) / $550,000.00 = 41.0%.

[93] September 2022 Agreement.

[94] $775,500.00 / $32,312.50 = 24.0 (repayment period in weeks); 24.0 / 52.0 = 0.46 years (repayment term in years).

[95] ($699,500.00 - $487,500.00) / $487,500.00 = 43.5% (cost percentage).

[96] 313.0% / 0.46 = 680.4% (annualized cost of debt as a percentage).  Assuming, for illustrative purposes, that the full stated purchase price is considered without adjustments for fees and expenses and for amounts applied to prior obligations, the implied annualized cost would approximate 89.0%.  41.0% / 0.46 = 89.0%.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

## 5. Actual Funding and Repayment Activity

The Debtor's bank records reflect the timing and flow of funds associated with the September 2022 Agreement. On September 8, 2022, Square wired $187,749.96 of net cash proceeds to Broughton, as a portion of the stated purchase price was withheld by Square and applied to amounts allegedly due under the prior agreement.[97]

Following receipt of these funds, regular withdrawals from the Debtor's M&T Bank account began on September 13, 2022. According to the Debtor's M&T Bank Account Statements, 13 weekly payments of $32,312.50 were made beginning September 13, 2022, and ending December 6, 2022, totaling $420,062.50.[98] Based on the Debtor's M&T Bank Account Statements, the Debtor paid to Square approximately $232,312.54 more than the actual net cash proceeds it received from Square.[99] *See* **Exhibit 1**.

## 6. Summary of Economic Impact and Reasonably Equivalent Value

The effective cost of the funds received, as described above, significantly exceeded the amount of net cash proceeds made available to the Debtor. Moreover, the September 2022 Agreement was premised on the availability of future receivables to support the weekly remittances. However, based on the records available as of the date of this Report, those receivables were limited or otherwise insufficient to sustain the required payments under the obligation without reliance on additional financing.

In this broader context of layered indebtedness, the transaction entered into pursuant to the September 2022 Agreement did not provide a commensurate economic benefit to the Debtor.

---

[97] M&T Bank Account Statements, September 1, 2022, to September 30, 2022.
[98] M&T Bank Account Statements, September 1, 2022, to December 31, 2022.
[99] $420,062.50 - $187,749.96 = $232,312.54.

Accordingly, it is my opinion that the Debtor did not receive reasonably equivalent value in exchange for this transaction.

### C. December 2022 Agreement

#### 1. Overview of the Transaction

As summarized previously, on or about December 9, 2022, the Debtor entered into an agreement with Square pursuant to which the Debtor purportedly sold future receivables with a face amount of $846,000.00 in exchange for a purchase price of $600,000.00, less additional fees and expenses of $12,500.00, for net funds to be received of $587,500.00.[100] The December 2022 Agreement also provided for remittances based on a specified percentage of receivables, identified as approximately 14.0%, and contemplated regular weekly payments until the full remittance amount was satisfied.[101]

However, an addendum to the December 2022 Agreement instructed that $355,437.50 of the purchase price be paid to Square, with the balance of $232,062.50 paid to the Debtor.[102] While the December 2022 Agreement does not explicitly state that any portion of the proceeds was applied to satisfy the remaining obligations under the September 2022 Agreement, based on the timing and flow of funds, it appears that amounts received in connection with the December 2022 Agreement were in fact used to satisfy such obligations.

As reflected in the Debtor's M&T Bank Account Statements, and as detailed in **Exhibit 1**, the Debtor received $187,749.96 in funds from Square on September 8, 2022.[103] The Debtor thereafter made 13 weekly payments to Square totaling $420,062.50.[104] Pursuant to the

---

[100] December 2022 Agreement.
[101] *Id.*
[102] *Id.*
[103] M&T Bank Account Statements, September 1, 2022, to December 31, 2022.
[104] M&T Bank Account Statements, September 1, 2022, to December 31, 2022.

September 2022 Agreement, the Debtor's obligation was $775,500.00.  Thus, at the time the December 2022 Agreement was entered into, the Debtor owed to Square a balance of $355,437.50, which is the same amount withheld by Square under the December 2022 Agreement.[105]

### 2.  Comparison of Value Exchanged

When considering the net cash proceeds actually received by the Debtor, together with amounts that appear to have been used to satisfy outstanding obligations under the September 2022 Agreement, the total obligation associated with this transaction exceeded the net new liquidity by approximately $613,937.50.[106]

### 3.  Cost of Debt

Based on the difference between the net cash proceeds received and the total amount required to be remitted, the transaction reflects an inherent cost to the Debtor.  The Debtor received a fixed amount of cash in exchange for an obligation to remit a greater amount over time, and the difference between those amounts represents the economic cost of the transaction. While the cost of debt may be higher in circumstances where a company is experiencing financial distress, it remains a relevant factor in evaluating the economic impact of the transaction.

Based on the net cash proceeds received and the total amount required to be remitted, the transaction reflects an implied cost of approximately 264.6%.[107]  This represents the difference

---

[105] $775,500.00 - $420,062.50 = $355,437.50.
[106] $846,000.00 - $232,062.50 = $613,937.50.
[107] ($846,000.00 - $232,062.50) / $232,062.50 = 264.6% (cost percentage).  Assuming, for illustrative purposes, that the full stated purchase price is considered without adjustments for fees and expenses and for amounts applied to prior obligations, the implied cost would approximate 41.0%. ($846,000.00 - $600,000.00) / $600,000.00 = 41.0%.

between the total obligation to the Debtor and the amount advanced by Square, expressed as a percentage of the net proceeds received.

### 4. Weekly Remittance Obligations

The December 2022 Agreement required the Debtor to remit approximately $38,454.54 on a weekly basis, reportedly reflective of a specified percentage (14.0%) of receivables for that week.   Based on the required remittance amounts, the total obligation would be satisfied over approximately 22 weeks (approximately five and a half months), assuming consistent payments.[108]

The December 2022 Agreement does not specify an interest rate.  However, based on the total amount required to be remitted, the net cash proceeds received, and the expected duration of repayment, it is possible to estimate the implied cost of debt which can be expressed on an annualized basis in a manner comparable to that of an effective interest rate.[109]

When this cost is considered over the estimated repayment period, the implied annualized cost of debt is approximately 630.0%.[110]  This level of costs reflects a financing structure that is significantly more expensive than what would be expected in conventional financing arrangements.

### 5. Actual Funding and Repayment Activity

The Debtor's bank records reflect the timing and flow of funds associated with the December 2022 Agreement.  On December 12, 2022, Square wired $232,062.50 of net cash

---

[108] $846,000.00 / $38,454.54 = 22.0 (repayment period in weeks); 22.0 / 52.0 = 0.42 years (repayment term in years).
[109] ($699,500.00 - $487,500.00) / $487,500.00 = 43.5% (cost percentage).
[110] 264.6% / 0.42 = 630.0% (annualized cost of debt as a percentage).  Assuming, for illustrative purposes, that the full stated purchase price is considered without adjustments for fees and expenses and for amounts applied to prior obligations, the implied annualized cost would approximate 98.0%.  41.0% / 0.42 = 98.0%.

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

proceeds to Broughton, as a portion of the stated purchase price was withheld by Square and applied to amounts allegedly due under the prior agreement.[111]

Following receipt of these funds, regular withdrawals from the Debtor's M&T Bank account continued on December 13, 2022.[112] According to the Debtor's bank account statements, 10 weekly payments of $38,454.54 were made beginning December 13, 2022, and ending March 7, 2023, totaling $384,545.40.[113] As detailed in **Exhibit 1**, no payments were made between February 7, 2023, and March 7, 2023. Additionally, after March 7, 2023, the Debtor was no longer remitting the full weekly amount required under the December 2022 Agreement. Instead, payment activity reflects reduced withdrawals of approximately $10,000.00 per week. Bank records further reflect that certain withdrawals were subsequently reversed.[114] *See* **Exhibit 1**.

Notwithstanding these irregularities, based on the Debtor's M&T Bank Account Statements, the Debtor paid Square approximately $182,482.90 more than the actual net cash proceeds it received.[115]

### 6. Summary of Economic Impact and Reasonably Equivalent Value

The effective cost of the funds received, as described above, significantly exceeded the amount of net cash proceeds made available to the Debtor. Moreover, the December 2022 Agreement was premised on the availability of future receivables to support the weekly remittances. However, based on the records available as of the date of this Report, those

---

[111] M&T Bank Account Statements, December 1, 2022, to December 30, 2022.
[112] The initial payment under the December 2022 Agreement consisted of two withdrawals: one attributable to the weekly amount pursuant to the September 2022 Agreement and one for the incremental amount under the December 2022 Agreement.
[113] M&T Bank Account Statements, December 1, 2022, to May 31, 2023.
[114] *Id*.
[115] $414,545.40 - $232,062.50 = $182,482.90.

receivables were limited or otherwise insufficient to sustain the required payments under the obligation without reliance on additional financing.

In this broader context of layered indebtedness, the transaction entered into pursuant to the December 2022 Agreement did not provide a commensurate economic benefit to the Debtor. Accordingly, it is my opinion that the Debtor did not receive reasonably equivalent value in exchange for this transaction.

## VI.   CONCLUSION

In summary, based on my professional qualifications, experience, review of the documents relied upon, and the results of my analyses as described in this Report, it is my opinion that:

- Notwithstanding certain limitations in the available data, the Debtor exhibited indicators of financial distress during the relevant period.  Overall trends reflect a deteriorating financial position over the relevant period.  In addition, the Debtor entered into multiple financing arrangements during this period, including transactions involving the purported sale or pledge of receivables, the availability and extent of which is not clearly supported by the available records.

- The Debtor did not receive reasonably equivalent value under each of the three transactions as issue.

  - With respect to the June 2022 Agreement, the Debtor received approximately $487,500.00 in net cash proceeds in exchange for a repayment obligation of $699,500.00.

  - With respect to the September 2022 Agreement, as a portion of the net cash proceeds were withheld and apparently applied to satisfy obligations under the prior agreement, the Debtor received approximately $187,749.96 in net cash proceeds in exchange for a repayment obligation of $775,500.00.

  - With respect to the December 2022 Agreement, as a portion of the net cash proceeds were withheld and apparently applied to satisfy obligations under the prior agreement, the Debtor received approximately $232,062.50 in net cash proceeds in exchange for a repayment obligation of $846,000.00.

*****

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
Expert Report of Lauren P. Berret

This Report and the accompanying exhibits are intended solely for use in connection with this matter and may contain confidential information. Any unauthorized use or distribution of this Report or its attachments is strictly prohibited.

I reserve the right to supplement or amend this Report upon learning of additional information that may impact the findings or opinions stated herein.

Respectfully submitted:


_____
Lauren P. Berret
April 13, 2026

# Appendix A

**LAUREN P. BERRET, JD, CPA**
Managing Director, Eisner Advisory Group, LLC
130 North 18th Street, Suite 3000
Philadelphia, PA 19103
Phone: (610) 413-8792 | E-mail: lauren.berret@eisneramper.com

Lauren P. Berret is a Managing Director in the firm's Bankruptcy and Restructuring Services Group with over a decade of experience advising debtors, creditors' committees, trustees, and court-appointed fiduciaries in restructuring and fiduciary matters. Lauren is known for leading stabilization efforts in complex, distressed operations where regulatory oversight, financial uncertainty, and litigation risk converge.  Her work reflects a cross-disciplinary approach, combining restructuring strategy, fiduciary advisory, and forensic financial analysis.

**PROFESSIONAL EXPERIENCE**:
**Eisner Advisory Group, LLC**, Philadelphia, PA
| | |
|---|---|
| *Managing Director* | Aug. 2025 - Current |
| *Director* | Aug. 2023 - July 2025 |
| *Senior Manager* | Apr. 2022 - July 2023 |

- Serve as financial advisor to a developer and provider of early childhood learning products including digital content and applications based in New York, NY, in Chapter 11 bankruptcy.
- Serve as financial advisor to the Chapter 7 Trustee of a prepared meal delivery company in Lorton, VA.
- Serve as financial advisor to the court-appointed receiver of a nursing home in Bridgeton, NJ.
- Serve as financial advisor to the court-appointed receiver of a nursing home in Medford, NJ.
- Serve as financial advisor to the court-appointed receiver of nursing homes in Deptford and Hammonton, NJ.
- Serve as financial advisor to owners/operators of skilled nursing facilities in Pennsylvania and West Virginia in Chapter 11 bankruptcy.
- Serve as financial advisor to the court-appointed receiver of a former medical and recreational marijuana company in Lafayette, New Jersey.
- Served as accountant to the assignee in an assignment for the benefit of creditors of a trend jewelry company.
- Served as financial advisor to the court-appointed receiver of a long-term care facility with a long and well-documented history of failure to comply with health and safety standards in Andover, NJ.  Stabilized operations and oversaw the transfer and relocation of 358 residents.
- Engaged by senior management of a consumer healthcare and beauty company to provide consulting services including performing an independent assessment of company operations, analyzing historical financial information, developing a cash flow and financial projection model, and providing recommendations.
- Engaged to provide sell-side due diligence services to a heating control systems operator and manufacturer in NJ.

**CBIZ Forensic Consulting Group**, New York, NY
| | |
|---|---|
| *Senior Manager* | Jan. 2022 - Apr. 2022 |
| *Manager* | Sept. 2020 - Dec. 2021 |

- Served as financial advisor to the Liquidating Trustee: HGRL Liquidating Trust (Dec. 2021); Advantage Rent A Car Unsecured Creditor Trust (Jan. 2022).
- Served as financial advisor to the Committee of Unsecured Creditors: LRGHealthcare (Oct. 2020); American Purchasing Services, LLC (Jan. 2021); New York Classic Motors, LLC (May 2021).
- Analyzed transactional data and evaluated potential defenses to asserted preference actions filed against a global healthcare supply chain business and its subsidiaries. Prepared multiple expert reports in connection with the defense.
- Engaged as financial advisors to shareholders of beachwear and beach sundry retailer in chapter 11 to evaluate potential claims that might arise in connection with the chapter 11 bankruptcy proceeding, including preference actions and alter ego analysis.

**Baker Tilly Virchow Krause, LLP**, Philadelphia, PA
*Manager*                                                        Jan. 2018 - Apr. 2020
*Senior Consultant*                                             July 2016 - Jan. 2018
- Provided financial advisory and consulting services to a litigation trust related to the restructuring of an offshore oil and gas drilling company with over $2 billion in assets.
- Assessed capital adequacy and ability to pay, analyzed sensitivity of integrated financial projection models, and completed industry research related to the restructuring of one of the world's largest offshore oil and gas drilling companies.
- Performed detailed analyses of company projections and assessment of capital adequacy and ability to pay of a large gaming corporation's $18 billion bankruptcy case.
- Conducted a $300,000 fraud investigation on behalf of a global marketing and branding agency.
- Conducted forensic reviews relating to structured finance transactions, including loan file review related to placement of mortgage loans for issuance of RMBS.

**Gleason & Associates, PC**, Pittsburgh, PA
*Staff II Consultant*                                          Sept. 2014 - June 2016
- Provided specialized financial and economic advisory services in practice areas including forensic accounting, personal economic damages, and business valuation.

**Alvernia University**, Reading, PA
*Adjunct Professor of Business*                               July 2014 - June 2016
- Instructed on subject matters of legal and accounting language, methodology, and concepts. Coursework included Managerial Accounting, Legal Environment, and Corporate Communication.

**Law Office of Lauren P. Berret**, Pittsburgh, PA
*Owner/Attorney*                                              June 2011 - Aug. 2014
- Represented debtors in Chapter 7 and Chapter 13 bankruptcy proceedings.

**Michael Fives & Associates**, Pittsburgh, PA
*Associate Attorney*                                          Sept. 2010 - July 2011
- Represented debtors in Chapter 7 and Chapter 13 bankruptcy proceedings.

**ACCOMPLISHMENTS AND HONORS**:
- Selected for inclusion in the American Bankruptcy Institute's 2024 class of "*40 Under 40*" honorees.
- Recipient of Turnaround Management Association 2024 "*Emerging Leader*" Award.
- Selected for inclusion in 2012 Pennsylvania Super Lawyers; listed in Rising Stars, primary area of practice listed as consumer bankruptcy.

**PUBLICATIONS**:
- Served as Guest Editor of the Turnaround Management Association, Journal of Corporate Renewal, September 2025 issue, "*The DEI Discussion—Keeping the Conversation Going*."
- Served as Guest Editor of the Turnaround Management Association, Journal of Corporate Renewal, September 2024 issue, "*The DEI Discussion—Driving Change Through Ongoing Conversations*."
- ABI Financial Advisors and Investment Banking Committee, "*Business Owners Be Aware: Decisions in COVID-19-Related Business Interruption Insurance Disputes Favor the Insurers*" (Apr. 14., 2022) available at: *https://www.abi.org/committee-post/business-owners-be-aware-decisions-in-covid-19-related-business-interruption*.
- Journal of Corporate Renewal, "*Getting Creative: Lauren P. Berret*" (Mar. 2021)

**SPEAKING ENGAGEMENTS**:
- Panelist (scheduled), "*Fiduciary Crossroads: Director Duties in the Zone of Insolvency*," IWIRC@ABI 2026 (Apr. 23, 2026)
- Panelist (scheduled), "*Issues Facing Healthcare Provider Bankruptcy Cases*," Association of the Federal Bar of New Jersey, 2026 William H. Gindin Bankruptcy Bench Bar Conference, (Apr. 17, 2026)
- Panelist, "*The Fair-and-Equitable Standard in Subchapter V: Avoiding or Navigating a Contested Confirmation,*" American Bankruptcy Institute's Annual Spring Meeting (Apr. 25, 2025)
- Panelist, "*Insolvency 2024: A Preview of What Industries are Hot, Bankruptcy Alternatives, and the Future of Third-Party Releases,*" IWIRC at the Shore (Feb. 23, 2024).
- Moderator, "*Pushing Forward in a Post-Affirmative Action Era – a Workshop on the Implications and Strategies for the Ongoing Promotion of DE&I,*" 2023 TMA Annual Conference (Oct. 4, 2023)
- Panelist, "*Small Business Restructuring: Are Rough Waters Ahead?*" 2022 TMA Mid-Atlantic Regional Symposium (June 9, 2022)
- Moderator, "*Education Session: Tips from the Titans,*" 2020 TMA NextGen Leadership Experience (Oct. 28, 2020)
- Panelist, "*Negotiation Strategies,*" IWIRC at the Shore (Mar. 6, 2020)
- Panelist, "*Top Consumer Cases,*" Pennsylvania Bar Institute's 21st Annual Bankruptcy Institute (Sept. 2016)
- Presenter, "*Hanging Your Own Shingle,*" Duquesne University School of Law's Capstone Course (Apr. 2014)
- Panelist, "*Technology to Help Manage and Produce Bankruptcy Documents,*" Pennsylvania Bar Institute's 18th Annual Bankruptcy Institute (Sept. 2013)

3

**E**DUCATION:
**University of Pittsburgh**, Pittsburgh, PA                    Apr. 2014
Certificate in Accounting

**Duquesne University School of Law**, Pittsburgh, PA       June 2010
Juris Doctor, *cum laude*

**University of Pittsburgh**, Pittsburgh, PA                    Aug. 2007
Bachelor of Science, *cum laude*
Majors: Political Science, Psychology; Minor: Legal Studies

**B**AR AND **C**OURT **A**DMISSIONS:
- Commonwealth of Pennsylvania (admitted Oct. 2010)
- U.S. District Court for the Western District of Pennsylvania (admitted Oct. 2010)
- U.S. Tax Court (admitted May 2013)
- District of Columbia Court of Appeals (admitted Feb. 2018)

**P**ROFESSIONAL **L**ICENSES:
- Certified Public Accountant (CPA)

**P**ROFESSIONAL **A**SSOCIATIONS:
- Turnaround Management Association (TMA), Member; 2026 TMA Global DE&I Committee
- International Women's Insolvency & Restructuring Confederation (IWIRC), Member; 2026 Finance Committee; Greater Philadelphia Chapter, Co-Chair
- American Bankruptcy Institute (ABI), Member

4

# Appendix B

**DOCUMENTS RELIED UPON**

Bankruptcy Court Filings
- *In re Casey Broughton Stringer*, Case No. 23-00239 (Bankr. D.D.C.), Chapter 7 Voluntary Petition filed August 28, 2023.
- *In re Broughton Construction Co., LLC*, Case No. 23-00378 (Bankr. D.D.C.), Chapter 7 Voluntary Petition filed December 15, 2023.
- Voluntary Petition [Docket No. 1], *In re Broughton Construction Co., LLC*, Case No. 23-00378 (Bankr. D.D.C.).
- Proof of Claim No. 17, filed by Industrial Bank, *In re Broughton Construction Co., LLC*, Case No. 23-00378 (Bankr. D.D.C.).

Adversary Proceeding Filings
- Complaint [Docket No. 1], *Wendell Webster v. Cloudfund LLC*, Adv. No. 25-10049-ELG, (Bankr. D.D.C.).
- Answer to Complaint [Docket No. 17], *Wendell Webster v. Cloudfund LLC*, Adv. No. 25-10049-ELG, (Bankr. D.D.C.).
- Complaint [Docket No. 1], *Wendell Webster v. Square Funding LLC d/b/a Square Advance*, Adv. No. 25-10054-ELG, (Bankr. D.D.C.).
- Answer to Complaint [Docket No. 9], *Wendell Webster v. Square Funding LLC d/b/a Square Advance*, Adv. No. 25-10054-ELG, (Bankr. D.D.C.).
- Complaint [Docket No. 1], *Wendell Webster v. CFG Merchant Solutions, LLC*, Adv. No. 25-10055-ELG, (Bankr. D.D.C.).
- Answer to Complaint [Docket No. 9], *Wendell Webster v. CFG Merchant Solutions, LLC*, Adv. No. 25-10055-ELG, (Bankr. D.D.C.).
- Complaint to Determine Dischargeability of Debt [Docket No. 1], *Industrial Bank v. Casey Broughton Stringer*, Adv. No. 25-10034-ELG, (Bankr. D.D.C.).

Statutes and Legal Authorities
- 11 U.S.C. § 548(a)(1)(B).
- 11 U.S.C. § 548(d)(2)(A).

Public Records / Third-Party Information
- BROUGHTON CONSTRUCTION COMPANY, INC. (March 24, 2026). *LinkedIn page*. LinkedIn. https://www.linkedin.com/company/broughton-construction-llc/about/.
- Government of the District of Columbia, Department of Licensing and Consumer Protection, Business Entity Search, Broughton Construction Company, LLC, https://corponline.dlcp.dc.gov/homepage/business-search (last accessed March 24, 2026).
- NJ Department of the Treasury, Division of Revenue & Enterprise Service, Business Entity Search, Square Funding LLC, https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName (last accessed April 1, 2026).
- Square Advance, https://squareadvance.com/ (last accessed March 24, 2026).

1

Financial Records
- Bank account statements for Broughton Construction Co., LLC, account ending in 4250, M&T Bank, for the period January 1, 2019, through August 31, 2023.
- Broughton Construction, LLC, 2019 Federal Income Tax Return, Form 1120-S.
- Broughton Construction, LLC, 2020 Federal Income Tax Return, Form 1120-S.
- Broughton Construction, LLC, 2021 Federal Income Tax Return, Form 1120-S.

Agreements and Transaction Documents
- Standard Merchant Cash Advance Agreement between Square Advance LLC and Broughton Construction Company LLC, dated June 14, 2022.
- Standard Merchant Cash Advance Agreement between Square Advance LLC and Broughton Construction Company LLC, dated September 8, 2022.
- Standard Merchant Cash Advance Agreement between Square Advance LLC and Broughton Construction Company LLC, dated December 9, 2022.

Other Materials
- Edward S. Weisfelner, *Advanced Fraudulent Transfers*, American Bankruptcy Institute (2014).

# Exhibit 1

*Wendell Webster v. Square Funding LLC d/b/a Square Advance*
Adv. No. 25-10054-ELG
**Square Funding LLC/Square Advance Transaction Summary**
**For the Period of June 14, 2022, to May 24, 2023**
*Source: M&T Bank, account statements for Broughton Construction Co., LLC, account ending in 4250, for the period of June 1, 2022, to August 31, 2023.*

| POSTING DATE | TRANSACTION DESCRIPTION | DEPOSITS & OTHER CREDITS (+) | | WITHDRAWALS & OTHER DEBITS (-) | |
|---|---|---|---|---|---|
| 06/14/2022 | INCOMING FEDWIRE FUNDS TRANSFER SQUARE ADVANCE | $ | 485,000.00 | $ | - |
| 06/15/2022 | Square Advance BROUGHTON BROUGHTON CONST | $ | 2,500.00 | $ | - |
| 06/21/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 06/27/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 07/05/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 07/12/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 07/19/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 07/26/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 08/02/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 08/09/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 08/16/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 08/23/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 08/30/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 09/06/2022 | Square Advance SQ225206 B SQ225206 BROUGH | $ | - | $ | 29,145.83 |
| 09/08/2022 | INCOMING FEDWIRE FUNDS TRANSFER SQUARE ADVANCE | $ | 187,749.96 | $ | - |
| 09/13/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 09/20/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 09/27/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 10/04/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 10/11/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 10/18/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 10/25/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 11/01/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 11/08/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 11/15/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 11/22/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 11/29/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 12/06/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 12/12/2022 | INCOMING FEDWIRE FUNDS TRANSFER SQUARE ADVANCE | $ | 232,062.50 | $ | - |
| 12/13/2022 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 6,142.04 |
| 12/13/2022 | Square Advance SQ225312 B SQ225312 BROUGH | $ | - | $ | 32,312.50 |
| 12/20/2022 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 12/27/2022 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 01/03/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 01/10/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 01/17/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 01/24/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 01/31/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 02/07/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 03/07/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 38,454.54 |
| 03/14/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 03/21/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 03/28/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 03/29/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 04/04/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 04/05/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 04/11/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 04/12/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 04/18/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 04/19/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 04/25/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 04/26/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 04/27/2023 | OUTGOING FEDWIRE FUNDS TRANSFER BRANCH SQUARE FUNDING LLC | $ | - | $ | 5,000.00 |
| 05/02/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 05/03/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 05/09/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 05/10/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 05/12/2023 | OUTGOING FEDWIRE FUNDS TRANSFER Square Funding LLC | $ | - | $ | 5,000.00 |
| 05/16/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 05/17/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| 05/23/2023 | Square Advance SQ225419 B SQ225419 BROUGH | $ | - | $ | 10,000.00 |
| 05/24/2023 | REVERSE PREAUTHORIZED WITHDRAWAL | $ | - | $ | (10,000.00) |
| | | $ | **907,312.46** | $ | **1,184,357.86** |