# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 23-378-ELG |
| | ) | |
| BROUGHTON CONSTRUCTION CO., LLC | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| WENDELL WEBSTER, in his official capacity | ) | |
| As chapter 7 trustee and as assignee of Industrial | ) | Adv. Case No. 25-10055-ELG |
| Bank and Nationwide Mutual Insurance Company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CFG MERCHANT SOLUTIONS, LCC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JAMES ELDER

I, James Elder, hereby declare and state as follows:

1.      I am the Collections Manager of CFG Merchant Solutions, LLC ("CFG"). As the Collections Manager of CFG, I have access to the books and records of CFG kept in the ordinary course of CFG's business. I make this Declaration based on my review of those records and from personal knowledge.

2.      CFG specializes in providing working capital to businesses via revenue-based financing products.

3.      In 2019, Broughton Construction Co., LLC approached CFG and filed an application to obtain working capital for its business. As a result, Broughton Construction Co., LLC entered into a series of Purchase Agreements ("Agreements") with CFG.

4.      Under the Agreements, Broughton Construction Co., LLC sold, assigned, and transferred to CFG a certain amount ("Amount Sold") of "all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card or other form of monetary payment in the ordinary course of Seller's business," defined in the Agreements as "Receipts."

5.      While some of the Agreements are not in CFG's possession anymore, the available terms of each transaction are as follows:

| Date | Amount Sold | Purchase Price | Purchased Percentage | Initial Estimated Remittance |
|---|---|---|---|---|
| 5/13/2019 | $108,000 | $75,000 | 10% | $1,139/daily |
| 7/26/2019 | $242,550 | $165,000 | 10% | $2,999/daily |
| 8/29/2019 | $147,000 | $100,000 | 10% | $2,500/daily |
| 1/28/2020 | $675,000 | $500,000 | 10% | $4,192/daily |
| 3/13/2020 | $202,500 | $150,000 | | |
| 12/31/2020 | $607,500 | $450,000 | | |
| 4/20/2021 | $337,500 | $250,000 | 10% | $4,400/daily |
| 7/9/2021 | $675,000 | $500,000 | 10% | $5,600/daily |
| 11/5/2021 | $405,000 | $300,000 | | |
| 2/14/2022 | $700,000 | $500,000 | 10% | $39,000/weekly |
| 4/6/2022 | $420,000 | $300,000 | 10% | $7,800/daily |
| 8/2/2022 | $847,000 | $605,000 | | |
| 10/31/2022 | $420,000 | $300,000 | 15% | $42,000/weekly |
| 1/18/2023 | $700,000 | $500,000 | 15% | $42,000/weekly |

6.      Under all the Agreements, Broughton Construction Co., LLC was not obligated to make payments in a specified amount to CFG. There are also no payment terms either express or implied in the Agreements. Under the Agreements, the only obligation of Broughton Construction Co., LLC was to remit the Purchased Percentage of Receipts periodically (either weekly or daily) until the Amount Sold was remitted to CFG.

7.      There was no specific time period within which Broughton Construction Co., LLC had to remit the Amount Sold because the obligation to remit the Purchased Percentage of Receipts

was completely contingent on Broughton Construction Co., LLC having Receipts on a given day or week. If Broughton Construction Co., LLC had no Receipts, then it was not obligated to remit anything to CFG and not making a remittance under such circumstances was not an Event of Default under the Agreements.

8.     Broughton Construction Co., LLC and CFG agreed in the Agreements that the Receipts would be remitted by CFG debiting via ACH debit a deposit account designated in the Agreements ("Account") into which all Receipts were to be deposited. The Account was meant to be held in trust by Broughton Construction Co., LLC for the benefit of CFG.

9.     Broughton Construction Co., LLC and CFG agreed in Agreements that initially, to obtain the Purchased Percentage of Receipts, CFG would ACH debit an estimated remittance amount (defined in the Agreements as "Daily Amount" or "Weekly Amount") each day or week. These amounts were determined to be the Purchased Percentage of weekly Receipts by reviewing historical Receipts information, calculating an average of the daily Receipts and then the Purchased Percentage of the average daily Receipts.

10.     At any time after the each of the Agreements was entered into, Broughton Construction Co., LLC had the right to request a reconciliation to "adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the specified Purchased Percentage." The reconciliation process is summarized in detail in Paragraph 8 of the Agreements. If a request for a reconciliation had been made by Broughton Construction Co., LLC under the Agreements (no such request was ever made), CFG was *required* to provide one and an accounting of how the reconciliation was performed would have been provided to Broughton Construction Co., LLC.

11.     While Broughton Construction Co., LLC agreed to remit the Receipts in the manner provided for in the Agreements (i.e. via ACH debits from the Account) that did not mean it was

the only means for CFG to collect the Receipts. The Agreements did not divest CFG of its right or ability to collect the Receipts directly from account debtors nor was Broughton Construction Co., LLC solely responsible to collect Receipts. Instead, CFG had the right to direct customers or account debtors to make payments directly to CFG if it chose to do so or if it was otherwise agreed by the parties that is how remittances would be made rather than via the ACH debits.

12.    There is no interest rate associated with the Agreements at all, nor can an interest rate be calculated because the Agreements do not have a finite term as there was no guarantee Receipts would be remitted periodically to CFG.

13.    CFG did not have any recourse against Broughton Construction Co., LLC if Broughton Construction Co., LLC declared bankruptcy in the ordinary course unless Broughton Construction Co., LLC had committed one or more Events of Default under the Agreements prior to filing for bankruptcy (filing for bankruptcy is not an Event of Default).

14.    Casey Broughton Stringer executed a Guaranty of Performance of all the Agreements, which provides that he "irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of Seller's obligations under the Agreement." There is nothing in the Agreements stating Mr. Stringer is liable to pay anything to CFG, let alone that he has any immediate personal liability to pay anything to CFG if Broughton Construction Co., LLC does not collect Receipts. Instead, CFG could only bring a breach of contract claim against Mr. Stringer seeking damages for a breach of the Guaranty of Performance.

15.    Prior to entering into any transaction, CFG conducts a thorough investigation of the seller's business, its revenue, and its account debtors to ensure that the seller has sufficient revenue to sustain the obligations under the Agreements. Accordingly, CFG conducted an investigation of Broughton Construction Co., LLC prior to entering into each of the Agreements and it determined,

based on the information provided by Broughton Construction Co., LLC, that Broughton Construction Co., LLC had sufficient revenue to sustain its obligations under the Agreements.

16.    In consideration for the Receipts sold, CFG paid Broughton Construction Co., LLC the Purchase Price, less applicable fees and renewal amounts when applicable, shortly after execution of the Agreements, as follows:

| Agreement Date | Date Money Sent | Money Sent to Seller |
|---|---|---|
| 5/13/2019 | 5/14/2019 | $71,721 |
| 7/26/2019 | 7/30/2019 | $102,568 |
| 8/29/2019 | 8/30/2019 | $98,201 |
| 1/28/2020 | 1/28/2020 | $492,500 |
| 3/13/2020 | 3/13/2020 | $148,025 |
| 12/31/2020 | 12/31/2020 | $445,500 |
| 4/21/2021 | 4/21/2021 | $248,500 |
| 7/9/2021 | 7/9/2021 | $495,500 |
| 11/5/2021 | 11/5/2021 | $297,000 |
| 2/15/2022 | 2/15/2022 | $262,000 |
| 4/7/2022 | 4/7/2022 | $182,000 |
| 8/2/2022 | 8/2/2022 | $501,421 |
| 10/31/2022 | 11/1/2022 | $296,821 |
| 1/18/2023 | 1/19/2023 | $276,421 |

17.    Broughton Construction Co. LLC's remittances under the Agreements were as follows:

| Agreement Date | Amount Sold | Amount Remitted |
|---|---|---|
| 5/13/2019 | $108,000 | $48,000 |
| 7/26/2019 | $242,550 | $242,550 |
| 8/29/2019 | $147,000 | $147,000 |
| 1/28/2020 | $675,000 | $675,000 |
| 3/13/2020 | $202,500 | $202,500 |
| 12/31/2020 | $607,500 | 607,500 |
| 4/21/2021 | $337,500 | $337,500 |
| 7/9/2021 | $657,000 | $252,000 |
| 11/5/2021 | $405,000 | $290,000 |
| 2/15/2022 | $700,000 | $600,000 |
| 4/7/2022 | $420,000 | $420,000 |
| 8/2/2022 | $847,000 | $627,000 |
| 10/31/2022 | $420,000 | $167,000 |

| 1/18/2023 | $700,000 | $0 |
|---|---|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 12, 2026

_____
JAMES ELDER